IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CASHIER'S CHECK IN THE AMOUNT OF FIVE HUNDRED NINETEEN THOUSAND FOUR HUNDRED EIGHTY-SIX DOLLARS AND TWELVE CENTS ($519,486.12) and CASHIER'S CHECK IN THE AMOUNT OF TWENTY-ONE THOUSAND EIGHT HUNDRED THIRTEEN DOLLARS AND EIGHTY-EIGHT CENTS ($21,813.88),<br><br>Defendants. | No. C07-0009-LRR<br><br>RULING ON MOTION TO STRIKE ANSWER |

## TABLE OF CONTENTS

I.  *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. *RELEVANT FACTS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. *APPLICABLE PROCEDURAL RULES*. . . . . . . . . . . . . . . . . . . 3

IV. *ANALYSIS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.  *Exercise of Discretion*. . . . . . . . . . . . . . . . . . . . . . . . . 6
    B.  *Excusable Neglect*. . . . . . . . . . . . . . . . . . . . . . . . . . 10
    C.  *Application to the Facts*. . . . . . . . . . . . . . . . . . . . . . 11

V.  *ORDER*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1

## I. INTRODUCTION

This matter comes before the Court on the Renewed Motion to Strike Answer of Jay McMichael (docket number 11) filed by the Plaintiff on November 1, 2007, and the Supplemental Resistance to Motion to Strike Answer (docket number 16) filed by Jay Don McMichael on December 5, 2007. Pursuant to Local Rule 7.1.c, the Motion will be decided without oral argument.

## II. RELEVANT FACTS

On January 18, 2007, Plaintiff United States of America filed a Verified Complaint of Forfeiture In Rem (docket number 1), seeking forfeiture of two cashier's checks totaling $541,300. In a Supporting Affidavit (docket number 1-3), DEA Task Force Officer Joshua Lupkes avers that the cashier's checks are proceeds from the sale of Jay McMichael's one-quarter interest in real property located at 2332 Ivory Avenue, Atalissa, Iowa, and McMichael Farms, Inc. The Government alleges that the money "represents proceeds traceable to real property which was used to facilitate the illegal trafficking of controlled substances." The money was turned over to the United States Marshals Service and is being held in the Seized Assets Deposit Fund pending disposition of this action.

According to the return of service, notice of the action was posted in the lobby of the Federal Building and United States Courthouse in Cedar Rapids, Iowa, and published in the *Tipton Conservative* in Tipton, Iowa, on February 7, 14, and 21, 2007. *See* Process Receipt and Return (docket number 5) at 3-5. The Government also caused several potential claimants to be served personally, including Jay Don McMichael, and McMichael's attorney, Leon Spies. Personal service was perfected on McMichael on February 5, 2007. *See Id.* at 7. Mr. Spies was served on February 7, 2007. *See Id.* at 8.

The notice served on McMichael and his attorney advised "any person claiming an interest" in the property that they are required to file a claim "no later than thirty (30) days after service of process has been executed, and within twenty (20) days after the day such claim is filed to answer the Complaint for Forfeiture." *See* Process Receipt and Return (docket number 5) at 5. On February 27, 2007, Attorney Leon F. Spies filed an Answer

(docket number 4) on behalf of Jay Don McMichael. At the Government's request, on March 29, 2007, the Court filed a Scheduling Order (docket number 7) establishing deadlines for discovery and filing of dispositive motions.

On April 5, 2007, the Government filed a Motion to Strike Answer of Jay McMichael (docket number 8), arguing that the Answer was improper since McMichael had not first filed a "claim." McMichael filed a Resistance (docket number 9) to the Government's Motion on April 16, 2007. By agreement of the parties, however, ruling on the Motion was deferred until resolution of the criminal case then pending against McMichael. *See* Order Regarding Motion to Strike Answer (docket number 10).

Jay Don McMichael was charged by Indictment on August 16, 2006, with two counts of distribution of methamphetamine and one count of possession of firearms and ammunition as an unlawful user of controlled substances. *See United States of America v. Jay Don McMichael*, No. CR06-110 (N.D. Iowa). Following McMichael's pleas of guilty to Counts 1 and 3, he was sentenced on June 7, 2007, to eighty-seven months in prison. On November 1, 2007, the Government filed its Renewed Motion to Strike McMichael's Answer in the instant action.

### III. APPLICABLE PROCEDURAL RULES

The Government seeks forfeiture of the cashier's checks pursuant to 21 U.S.C. §§ 881(a)(6) & (7). The procedures governing forfeiture actions in rem are set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Supplemental Rule G(1) ("This rule governs a forfeiture action in rem arising from a federal statute."). *See also United States v. Ford 250 Pickup*, 980 F.2d 1242, 1243 (8th Cir. 1992) (In forfeiture proceedings brought under 21 U.S.C. § 881, the Supplemental Rules must be followed.).

Rule G requires that a person who asserts an interest in the subject property and contests the forfeiture, must file a claim. The claim must:

      (A)    identify the specific property claimed;
      (B)    identify the claimant and state the claimant's interest in the property;
      (C)    be signed by the claimant under penalty of perjury; and

> (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

Supplemental Rule G(5)(a)(i).

The deadline for filing a claim depends upon the type of notice which was provided. Rule G(5)(a)(ii). If direct notice is given to a potential claimant, then the time for filing a claim is that stated in the notice. Rule G(5)(a)(ii)(A). If notice was published, "but direct notice was not sent to the claimant or the claimant's attorney," then the claim must be filed no later than thirty days after final publication of the newspaper notice. Rule G(5)(a)(ii)(B). If notice was not published and direct notice was not sent to the claimant or the claimant's attorney, then the claim must be filed no later than sixty days after the filing of the complaint. Rule G(5)(a)(ii)(C).

When direct notice is given to a potential claimant, as in this case, the notice must state:

> (A) the date when the notice is sent;
> (B) a deadline for filing a claim, at least thirty-five days after the notice is sent;
> (C) that an answer or a motion under Rule 12 must be filed no later than 20 days after filing the claim; and
> (D) the name of the government attorney to be served with the claim and answer.

Supplemental Rule G(4)(b)(ii).

Rule G also requires that "[a] claimant must serve and file an answer to the complaint or a motion under Rule 12 within 20 days after filing the claim." Supplemental Rule G(5)(b). At any time before trial, the government may move to strike a claim or answer for, among other things, failing to comply with Rule G(5). Supplemental Rule G(8)(c)(i)(A).

## IV. ANALYSIS

Supplemental Rule G(5)(a) provides that a person may contest the forfeiture of property by filing a claim not later than the time set forth in the notice. In this case, McMichael was served with a notice informing him that a claim must be filed "no later

4

than thirty (30) days after service of process has been executed."[1] McMichael was served on February 5, 2007 and filed an Answer on February 27, 2007, well within the time permitted by the Rules to file a claim. The Answer generally provided the information which would otherwise be included in a claim, but it was not signed by McMichael under penalty of perjury, as required by Supplemental Rule G(5)(a)(i)(C).

The Government argues that filing a claim is a prerequisite to filing an answer and, therefore, McMichael's answer fails to comply with the Rules and should be stricken.[2] McMichael argues that "[b]ecause the government's motion to strike asserts only a technical procedural defect in McMichael's claim, he respectfully requests that the court permit him to file an untimely verified claim required by the rule." *See* Memorandum in Support of Claimant's Supplemental Resistance (docket number 16-2) at 4.

---

[1] The Court notes parenthetically that notice given to potential claimants must include "a deadline for filing a claim, at least 35 days after the notice is sent," rather than the 30 days provided after publication. Compare, Supplemental Rule G(4)(b)(ii)(B) and Supplemental Rule G(5)(a)(ii)(B). According to the Advisory Committee Notes, this variation reflects the procedure for nonjudicial forfeiture proceedings found in 18 U.S.C. § 983(a)(2)(B). According to the Committee Notes,
> [t]his procedure is as suitable in a civil forfeiture action as in a nonjudicial forfeiture proceeding. Thirty-five days after notice is sent ordinarily will extend the claim time by no more than a brief period; a claimant anxious to expedite proceedings can file the claim before the deadline; and the government has flexibility to set a still longer period when circumstances make that desirable.

The distinction between the thirty-five day requirement found in Rule G(4)(b)(ii)(B) and the thirty days set forth in the notice served on McMichael would not seem to be significant, however, since McMichael *never* filed a claim.

[2] The Court notes that neither the Motion to Strike Answer of Jay McMichael (docket number 8) filed by the Government on April 5, 2007, nor the Renewed Motion to Strike (docket number 11) filed by the Government on November 1, 2007, is supported by a brief, as required by Local Rule 7.1.d, nor did the Government reply to McMichael's legal memorandum (docket number 16-2) filed on December 5, 2007.

## A. Exercise of Discretion

The issue raised in the instant action was addressed directly by the Eighth Circuit Court of Appeals in *United States v. Beechcraft Queen Airplane*, 789 F.2d 627 (8th Cir. 1986). There, the government filed a complaint seeking forfeiture pursuant to 21 U.S.C. § 881(a). The claimant was served with a copy of the complaint. At that time, the Supplemental Rules required a claim to be filed within ten days after service of process, and an answer to be served within twenty days after the filing of the claim.[3] *Id.* at 629. Eighteen days after being served with notice, the claimant filed an answer signed by his attorney. *Id.* The claimant did not file any pleadings within ten days of service of process, and he never filed a verified claim as required by the Supplemental Rule. *Id.* The government moved to strike defendant's answer "because [the claimant] had not filed a verified claim and therefore had no right to answer or defend the suit." *Id.* The district court granted the motion. The claimant argued that the trial court should not have granted the government's motion to strike "because the answer filed by [the claimant] served the basic purpose of Rule C(6)."[4] *Id.* The Eighth Circuit Court of Appeals affirmed.

> We hold that the District Court did not abuse its discretion by requiring strict compliance with Rule C(6) and striking [the claimant's] answer because he did not precede it with a verified claim.

*Id.* at 630. The Court noted that "[a] more liberal approach might be appropriate if [the claimant] had timely petitioned the court to grant an extension of time, or if he could show that he had never received actual notice of the complaint, or some other mitigating circumstances, but he makes only a general plea for liberal construction." *Id.* In

---

[3] In 2002, the Supplemental Rules were amended to allow thirty days after service to file a claim, and twenty days thereafter to serve an answer.

[4] Supplemental Rule G was added in 2006 "to bring together the central procedures that govern civil forfeiture actions." Supplemental Rule G, Advisory Committee Notes. The Supplemental Rule requiring the filing of a verified claim, previously found in Rule C(6), is now found in Rule G(5).

6

affirming the district court, the Court of Appeals noted that "we are given no reason why the proper claim was not filed." *Id.*

Similarly, in the instant action McMichael filed an Answer signed by his attorney, without first filing a verified claim. McMichael claims that "his failure to file a claim was, under the circumstances, due to excusable neglect." *See* Supplemental Resistance (docket number 16) at 1-2. However, McMichael offers only vague allegations in support of his argument.

> McMichael contends that given the factual and procedural history during the course of his criminal case, his cooperation with the government in the investigation of his interest in McMichael Farms, and the parties' efforts to negotiate a resolution of the claimed forfeiture constitute the basis for excusable neglect for his failure to file a verified claim.

*See* Memorandum in Support of Claimant's Supplemental Resistance (docket number 16-2) at 5.

The filing of a verified claim, as required by the Supplemental Rules, "is no mere procedural technicality." *United States v. $23,000 in United States Currency*, 356 F.3d 157, 163 (1st Cir. 2004). "It forces claimants to assert their alleged ownership under oath, creating a deterrent against filing false claims." *Id.* In addition, the verified claim "serves as the means of establishing statutory standing in forfeiture actions." *United States v. $31,852.38 in United States Currency*, 183 Fed. Appx. 237, 240 (3d Cir. 2006). The Eleventh Circuit Court of Appeals has noted that a verified claim "provides 'the government with timely notice of a claimant's interest in contesting the forfeiture and, by requiring a sworn claim, to deter the filing of false claims.'" *United States v. $125,938.62*, 370 F.3d 1325, 1328 (11th Cir. 2004).

The requirement in the Supplemental Rules that both a claim and an answer be filed is "plain and unambiguous." *United States v. United States Currency Totalling $3,817.49*, 826 F.2d 785, 787 (8th Cir. 1987). Strict compliance with the Rule requires both a claim and an answer. *Ford 250 Pickup*, 980 F.2d at 1245. The Eighth Circuit has held repeatedly that it is not an abuse of discretion for the district court to require strict

7

compliance with the Supplemental Rules. *Ford 250 Pickup*, 980 F.2d at 1245; *United States v. One Parcel of Property*, 959 F.2d 101, 104 (8th Cir. 1992); *Beechcraft Queen Airplane*, 789 F.2d at 630. The Second Circuit has also noted that strict compliance with the Supplemental Rules is "typically required." *United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993).

McMichael cites cases from other circuits, however, where the court has exercised its discretion to allow the claimant relief from strict application of the Supplemental Rules. For example, in *United States v. $14,605 in United States Funds*, 2007 WL 3027395 (M.D. Ga.), the claimant's attorney filed an answer twenty-three days after receiving notice of the forfeiture action, but no claim to the property was ever filed. *Id.* at *1. The government filed a motion asking the court to strike the answer "because of [the claimant's] failure to file a verified claim." *Id.* While noting that "the verified claim required by Rule G(5) confers statutory standing upon the claimant in a forfeiture proceeding," the district court nonetheless concluded that the motion to strike should be denied.

> Here, the Government received timely notice of [the claimant's] interest in contesting the forfeiture when [the claimant] filed an answer to the verified complaint. Thus, the Government was made aware early that [the claimant] was putting forth an interest in the seized currency. Furthermore, there is nothing in the record to suggest that the Government would be prejudiced by the late filing of a verified claim. As the Eleventh Circuit has noted, "Forfeiture is a harsh penalty especially when the outcome is forced because of technical and procedural errors." [citing *United States v. $125,938.62.*] In this case, there does not appear to be any reason to impose such a harsh penalty on [the claimant], particularly where the procedural errors can be resolved with the filing of a verified claim.

*Id.* at *2. The district court gave the claimant twenty days from the date of the entry of the order in which to file a claim that complied with the requirements of Supplemental Rule G(5).

8

In *United States v. $125,938.62*, 370 F.3d 1325 (11th Cir. 2004), the Court noted that while a district court may require strict compliance with the Supplemental Rules, "the Court may exercise its discretion by extending the time for the filing of a verified claim." *Id.* at 1328-1329. The Court identified some of the factors which the district court should consider in exercising its discretion:

> The time the claimant became aware of the seizure, whether the Government encouraged the delay, the reasons proffered for the delay, whether the claimant had advised the court and the Government of his interest in defendant [property] before the claim deadline, whether the Government would be prejudiced by allowing the late filing, the sufficiency of the answer in meeting the basic requirements of a verified claim, and whether the claimant timely petitioned for an enlargement of time.

*Id.* at 1329. In evaluating these factors, the Court of Appeals cautioned that "[t]he district court should be wary to not confer the sins of the attorney unto the claimant in a civil forfeiture case, especially when the prejudice to the government, if any, is slight."[5] *Id.*

In *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432 (9th Cir. 1985), the claimants filed a timely answer to the complaint, but failed to file a verified claim to the property. *Id.* at 1433. When the omission was discovered over one year later, the claimants filed an unopposed application for permission to file a verified claim. The district court denied the application "stating that there is no provision in the law for extending the time for the filing of said claims." *Id.* The Ninth Circuit Court of Appeals reversed, however, and remanded to the district court "with instructions that it exercise its discretion in deciding whether or not to allow claimants to submit a verified claim." *Id.* at 1437. The Court noted that under the circumstances presented, "the goals behind the time restriction would not be defeated by allowing the late filing." *Id.* at 1436.

---

[5] *But see Pioneer Inv. Services Co. v. Brunswick Associates, Ltd. Partnership*, 507 U.S. 380, 397 (1993) (In determining whether the failure to file a claim in bankruptcy was excusable, the "respondents [must] be held accountable for the acts and omissions of their chosen counsel.").

9

> We do not minimize the significance of the requirement that a claim be verified on oath or solemn affirmation. We have recognized that the danger of false claims is substantial. [citation omitted] However, where a claimant has made known to the court and the government his interest in the subject property (in this case, by filing an answer asserting ownership of the property) before the deadline set for filing of a proper claim has passed, the policy interest underlying the requirement of a timely verified claim would not be injured by allowing the claimant to perfect his claim by subsequent verification.

*Id.*

### B. Excusable Neglect

The Eighth Circuit Court of Appeals has also recognized that there are circumstances when the district court, in the exercise of its discretion, may grant the claimant relief following the entry of default judgment. In *United States v. United States Currency Totalling $3,817.49*, 826 F.2d 785 (8th Cir. 1987), the claimants filed an unverified claim and an untimely answer. The district court found that the claimant's failure to file either a verified claim or a timely answer, as required by the Supplemental Rules, "required entry of a default judgment." *Id.* at 786. The Eighth Circuit Court of Appeals affirmed the default judgment, but suggested that the claimant may be entitled to relief under FEDERAL RULE OF CIVIL PROCEDURE 60(b).

> [W]e affirm the district court's default judgment without prejudice to the claimant's filing of a motion under Rule 60(b) of the Federal Rules of Civil Procedure to vacate the default judgment for mistake, inadvertence, surprise or excusable neglect.

*Id.* at 788. Similarly, in *United States v. Ford 250 Pickup*, 980 F.2d 1242 (8th Cir. 1992), the claimant filed a "certified claim" with the clerk of court, but the claim "was not served on the United States Attorney handling the matter," in violation of the Supplemental Rules. *Id.* at 1244. The district court granted the government's motion to strike the claim and also to strike the answer as untimely. Default judgment was entered in favor of the

plaintiff. *Id.* at 1244. The Eighth Circuit affirmed, but suggested that the claimant may be entitled to relief if it could establish excusable neglect.

> In order to avoid the strict requirements of Rule C(6), the party attempting the untimely filing must show excusable neglect or a meritorious defense.

*Id.* at 1245.

In the recent case of *United States v. 20660 Lee Road*, 496 F. Supp. 2d 1012 (S.D. Ia. 2007) (C.J. Pratt presiding), the court discussed excusable neglect in this context.

> The Eighth Circuit has further delineated the boundaries of excusable neglect, finding that it is "generally 'understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.'" "To be excusable, however, the neglect must be accompanied by a showing of good faith and some reasonable basis for not complying with the rules." Excusable neglect does not include "ignorance or carelessness on the part of an attorney," nor does excusable neglect encompass "the failure to follow the clear dictates of a court rule."

*Id.* at 1015-1016 (internal citations omitted).

In determining whether a stated reason for failing to comply with a procedural deadline constitutes excusable neglect pursuant to FEDERAL RULE OF CIVIL PROCEDURE 60(b), the United States Supreme Court has set forth four factors to be considered:

> [T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993).

### C. *Application to the Facts*

With these general principles in mind, the Court now turns to the facts in the instant action. In its instant Motion, the Government requests that the Court enter an order striking the Answer of Jay McMichael. If the Motion is granted, a request for default

judgment will presumably follow. Since default judgment has not entered, however, the Court concludes that the excusable neglect standard set forth in FEDERAL RULE OF CIVIL PROCEDURE 60(b), as urged by McMichael in his Supplemental Resistance, is inapplicable. Rather, the Court concludes that in ruling on the Motion to Strike, it may exercise its discretion, including consideration of the factors identified in *United States v. $125,938.62*, as set forth on page nine above.[6]

In this case, McMichael filed an Answer to the Complaint on the 22nd day after being served with notice, well within the time prescribed by the Supplemental Rules for filing a claim. The Answer does not explicitly "state the claimant's interest in the property," as required by Supplemental Rule G(5)(a)(i)(B). Also, the Answer is not signed by the claimant under penalty of perjury, as required by Supplemental Rule G(5)(a)(i)(C). At all times, however, the Government understood McMichael's "interest in the property." In an Affidavit attached to the Complaint, DEA Task Force Officer Joshua Lupkes asserted, among other things, that the cashier's checks represented "JAY MCMICHAEL's ownership interest in the real property located at 2332 Ivory Avenue, Atalissa, Iowa, and MCMICHAEL Farms, Inc." In his Answer, McMichael admits that an Affidavit is attached to the Complaint, but denies the allegations "suggesting the facts and circumstances revealed in the attachment justify forfeiture of the Defendant funds."

The purpose of filing a verified claim is to establish the claimant's standing and to reduce the risk of false claims. In this case, however, the Government concedes that the cashier's checks represent proceeds from the sale of McMichael's property. There is no dispute regarding the nature of the Defendant property. The Government cannot claim surprise that McMichael claims an interest in the property. Indeed, the Government pleads that the property constitutes the proceeds of McMichael's interest in real property and a

---

[6]The Court notes parenthetically, however, that the factors to be considered in the exercise of discretion and when considering a claim of excusable neglect are similar; e.g., the reason given for the failure to timely file, whether prejudice will result to the opposing party, etc.

farm corporation. McMichael offers only vague allegations regarding the reason for his failure to file a verified claim. While not specifically indicated in McMichael's resistance to the instant Motion, it would appear that his failure to file a claim resulted from counsel's oversight. Notably, the Government claims no prejudice in this regard.

While the Court does not minimize the importance of strict compliance with the Supplemental Rules, I conclude that under the circumstances of this case McMichael should be given an opportunity to file a verified claim as required by Supplemental Rule G(5)(a). In support of that conclusion, the Court notes that McMichael filed an Answer within the time required for filing a claim, McMichael's standing and interest in the property was well-known to the Government at all times, and no prejudice will result to the Government. Accordingly, the Court finds that the Renewed Motion to Strike Answer should be denied. McMichael will be given twenty days from the filing of this Order in which to file a claim which complies with Rule G(5)(a)(i). If McMichael fails to comply with this requirement, then the Court will reconsider the Government's Motion to Strike.

## *V. ORDER*

IT IS THEREFORE ORDERED as follows:

1. The Renewed Motion to Strike Answer of Jay McMichael (docket number 11) filed by the Government on November 1, 2007, is hereby **DENIED**.

2. Within twenty (20) days following the filing of this Order, Jay McMichael must file a claim which fully complies with Supplemental Rule G(5)(a)(i). If McMichael fails to comply in this regard, then the Court will reconsider its ruling on the Government's Motion to Strike.

DATED this 24th day of December, 2007.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA